IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA
Ex rel. KEVIN GRAY                                                                            PLAINTIFF/RELATOR

v.                                                                    CIVIL ACTION NO. 3:15-cv-127-MPM-JMV

MITIAS ORTHOPAEDICS, PLLC; CHAMPION
ORTHOPAEDICS DESOTO, P.L.L.C. d/b/a
CHAMPION ORTHOPAEDICS & SPORTS
MEDICINE; and HANNA M. MITIAS, M.D.                                                                  DEFENDANTS

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF
## MOTION TO ENFORCE SETTLEMENT
**(*Expedited Treatment Requested by December 31, 2022*)**

Defendants Mitias Orthopaedics, PLLC; Champion Orthopaedics Desoto P.L.L.C. d/b/a Champion Orthopaedics & Sports Medicine; and Hanna M. Mitias, M.D. ("Dr. Mitias") (collectively "Defendants"), by and through counsel, hereby file their Memorandum of Authorities in Support of their Motion to Enforce Settlement and, in support, would show:

### INTRODUCTION

On October 11, 2022, Magistrate Judge Virden read into the record all material terms of the Settlement Agreement that resolved the instant lawsuit. All that remains is executing formal documents memorializing the Settlement Agreement. The material terms are simple, *i.e.*, Defendants agreed to pay a sum certain in exchange for dismissal with prejudice of the Amended Complaint in Intervention. However, the United States – in memorializing the Settlement Agreement – now seeks to include numerous material terms to which Defendants have not agreed. For example, attached as Exhibit "2" to this Motion is a ***four-page*** proposed settlement agreement that strictly memorializes the terms agreed to on the record. On the other hand, the United States proposed a ***fourteen-page*** settlement agreement and mutual release replete with terms and conditions never discussed, much less agreed to on the record. Notably, the United States refuses

to include certain material terms *that were agreed to on the record*. Specifically, the United States refuses to include in the written Settlement Agreement the monetary damages attributable to claims made by Dr. Robert Pickering, Dr. Jeffrey Dlabach, and Nurse Practitioner Kevin Yekaitis. This description delineating the damages was read onto the record and agreed to by the Parties. Moreover, no release is required considering a material term of the Settlement Agreement is that the Department of Health and Human Services specifically reserved its rights as to any administrative proceedings or remedies with respect to the claims in this action.

Defendants require the Court's assistance to enforce the settlement agreement that the Parties agreed to on the record. This can be accomplished by either issuing an order that: (1) the transcript of the settlement conference on October 11, 2022 be placed in the docket as the Settlement Agreement; (2) the United States provide Defendants with payment instructions; and, (3) the case is dismissed with prejudice or, alternatively, by ordering the United States to sign the writing attached as Exhibit "2," which memorializes the Settlement Agreement on the record. A transcript of the Parties' Settlement Agreement read on the record is attached hereto as Exhibit "1." Moreover, Defendants seek expedited treatment of this Motion to Enforce so that they may satisfy the payment schedule as the first two payments are due on December 31, 2022. Defendants are ready, willing, and able to pay in accordance with the Settlement Agreement. They only require that the United States provide payment instructions.

## **FACTUAL BACKGROUND**

On October 11, 2022 the United States of America, acting through the United States Department of Justice ("DOJ") and on behalf of the Office of Inspector General of the Department of Health and Human Services ("HHS-OIG") (collectively the United States"), counsel for Relator

Kevin Gray[1], counsel for Defendants, and Dr. Mitias attended a settlement conference wherein the Parties settled the instant matter. HHS-OIG chose not to attend the settlement conference. Instead, DOJ represented the United States and had full authority to enter the Settlement Agreement.

Magistrate Judge Virden read the material terms of the Settlement Agreement into the record. (*See* Exhibit "1" – Settlement Conf. Trans.). Judge Virden ensured that the Parties confirmed that the negotiated material terms were reflected in the Settlement, noting:

> THE COURT: … Parties, I will – I'll turn first to the Government and ask counsel if I have announced the terms of the settlement correctly as you understood them.
> MR. WEBSTER: Yes, Your Honor. Harland Webster on behalf of the United States. That sounds correct.
>
> THE COURT: Okay. And, I guess for the Defendant's counsel as well as [by] Dr. Mitias, I'd like to hear from both counsel and the Defendant.
>
> MR. COMLEY: The terms are correct, Your Honor. Rusty Comley on behalf of the defendants.
>
> THE COURT: All right. Dr. Mitias, these are the terms you agree to?
>
> DR. MITIAS: This is Johnny Mitias and I agree to those terms.

*See id.* at 3–5. The Court subsequently dismissed the case by reason of settlement. *See* [ECF No. 310].

Following the settlement conference, the United States was to submit to Defendants a memorialization of the Settlement Agreement and instructions for payment. On October 18, 2022, the United States provided Defendants with a proposed settlement agreement that contained numerous material terms not negotiated for or addressed in the Settlement Agreement read into the record. For example, the United States proposed 14-page settlement agreement contains mutual releases that were not bargained for, a provision in which Defendants consent to publication of the Settlement Agreement, and recitals of the United States' contentions regarding Defendants

---

[1] The Court excused Relator Gray from attending the Settlement Conference.

3

bad acts – while refusing to allow Defendants a responding contention. None of these terms were discussed, agreed to, or read into the record at the settlement conference.

Upon information and belief, the problem appears to be at the HHS-OIG level. As stated above, an HHS-OIG attorney chose not to attend the settlement conference and gave DOJ the authority to settle. Now, HHS-OIG wants to add numerous terms that are not included in the Settlement Agreement *read into the record*. This attempt to backdoor new terms is especially egregious because HHS-OIG specifically reserved its right to bring any administrative or enforcement action against Defendants related to the claims in the Amended Complaint in Intervention. The Settlement Agreement merely disposes of the claims raised in the Amended Complaint in Intervention.

The HHS-OIG cannot dictate additional provisions of the settlement agreement when it reserves its right to bring any and all administrative action against Defendants. Yet this is exactly what the HHS-OIG is attempting to do. For example, the HHS-OIG is seeking a mutual release of all claims – which neither the United States nor Defendants bargained for. Typically, a release is appropriate when the Parties agree to a corporate integrity agreement ("CIA") wherein HHS-OIG releases its right to pursue administrative action in accordance with a defendant's agreement to abide by the terms of the CIA. However, Defendants did not agree to a CIA in this case. However, in this case, a "mutual release of claims" is facially illogical because HHS-OIG has reserved its right to pursue any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs, against Defendants. The opposite of a release is a reservation. Despite *reserving its rights*, the HHS-OIG seeks to require Defendants to release their right to assert a claim against the United States for any future administrative action taken by HHS-OIG *pursuant to its reservation*.

Defendants negotiated and agreed to a dismissal with prejudice of the claims in the Amended Complaint in Intervention. Nothing else was bargained for from an HHS-OIG perspective. DOJ entered into an enforceable Settlement Agreement, the terms of which are limited to those read into the record at the conclusion of the settlement conference. Defendants have been attempting to comply with the United States' requests for approximately two months to no avail. Accordingly, Defendants request that the Court enforce the Settlement Agreement as read into the record. Moreover, Defendants request that the Court treat this Motion to Enforce in an expeditious manner so that Defendants may comply with the payment schedule contained in the Settlement Agreement. Defendants first payments are required by December 31, 2022.

## ARGUMENT

"The Fifth Circuit has recognized that 'a district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties.'" *Peacock v. Deutsche Bank Nat'l Tr. Co.*, No. 4:20-CV-03945, 2022 WL 1185173, at *2 (S.D. Tex. Apr. 19, 2022), *report and recommendation adopted*, No. 4:20-CV-03945, 2022 WL 2176740 (S.D. Tex. June 16, 2022) (quoting *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020) (cleaned up)). "A federal court exercising federal-question jurisdiction looks to federal law to determine whether the settlement agreement is valid and enforceable when the parties derive their substantive rights and liabilities from federal law." *Id* (citing *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984)). "Compromises of disputed claims are favored by the courts." *McGovern v. Enterprise Restoration Services, L.L.C.*, Civ. No. 19-12525, 2020 WL 2495730, at *2 (E.D. La May 14, 2020).

"Under federal law, a settlement agreement is a contract." *Peacock*, 2022 WL 1185173, at *2 (citing *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992)). Thus, "a binding settlement agreement exists where there is a manifestation of mutual assent,

5

usually in the form of an offer and an acceptance." *Peacock,* 2022 WL 1185173, at *2 (quoting *Chen v. Highland Cap. Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (cleaned up)). "An agreement on all essential terms, with no material matters left open to negotiate, creates a binding and enforceable settlement." *Id.* (citing *Lee v. Gulf Coast Blood Ctr.*, No. CV H-19-4315, 2020 WL 4700896, at *5 (S.D. Tex. Aug. 13, 2020)); *see also APS Cap. Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272 (5th Cir. 2009).

A binding "agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance." *Lopez v. Kempthorne*, No. H-07-1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010) (citing *Turner Marine Fleeting, Inc. v. Quality Fab & Mech., Inc.*, 2002 WL 31819199, at *4 (E.D. La. Dec. 13, 2002)). "Acceptance is possible through any manifestation of assent that occurs in any reasonable manner." *See* Restatement (Second) of Contracts § 50, cmt. a. (1981). "Federal law does not require settlement agreements to be reduced to writing." *E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) (*per curiam*)).

In *McGovern*, the court enforced a settlement agreement in which the parties agreed to material terms and all that remained was the drafting of formal documents. *See* 2020 WL 2495730, at *3. The court explained as follows:

> Here, the parties manifested an intent to enter a settlement based on agreed-upon material terms. Peragine stated that the parties were "good to go" on the settlement, and all that remained was the drafting of the formal documents. The parties agreed that defendant would pay McGovern $1,000 a month until the claim was paid in full and to indemnify him in a separate suit, in exchange for McGovern's dismissal of the claims at issue here. Defendant's lawyer assented to these terms, and there is no argument that he lacked the authority to do so. That the parties never signed formal settlement document does not allow defendant to renege on the terms that have been agreed upon. As such, the Court grants plaintiff's motion to enforce the settlement.

*Id.* "A party who 'changes his mind when presented with the settlement documents ... remains

6

bound by the terms of the agreement' if the parties agreed to all material terms." *Id.* (quoting *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981)). "Where a party consents to the material terms of a settlement agreement that were read into the record, that party has entered into a binding settlement contract." *Spellbound Development Group Inc. v. Pacific Handy Cutter Inc.*, Civ No. SACV 09-0951 DOC (ANx) 2012 WL 12905301, at *1 (C.D. Cal. Jul. 3, 2012).

In the instant case, there is a binding settlement agreement. The United States offered to resolve the Amended Complaint in Intervention in accordance with the terms of the Settlement Agreement read into the record. Defendants agreed to those material terms. The Magistrate Judge confirmed with all Parties that the terms of the Settlement Agreement were correct, and all Parties agreed that they were. All that remained was to draft written documents that memorialize the Settlement Agreement. As described above, in its efforts to memorialize the Settlement Agreement the United States has both added and *removed* material terms in their proposed formal documents. The United States cannot refuse to sign a settlement agreement that it has agreed to based on Defendants refusal to exceed the scope of the settlement agreement. In other words, the United States cannot change its mind when presented with settlement documents that memorialize the specific terms agreed to in open court.

Accordingly, Defendants request that the Court enter an order enforcing the Settlement Agreement as read into the record. The Court should either enter an order that: (1) the transcript of the settlement conference on October 11, 2022 (Exhibit "1") be placed in the docket as the Parties' Settlement Agreement; (2) the United States provide Defendants with payment instructions; and (3) the case is dismissed with prejudice, or, alternatively, enter an order that the United States execute the written Settlement Agreement attached as Exhibit "2."

Respectfully submitted, this the 7th day of December 2022.

                MITIAS ORTHOPAEDICS, PLLC; CHAMPION ORTHOPAEDICS DESOTO, P.L.L.C D/B/A CHAMPION ORTHOPAEDICS & SPORTS MEDICINE; & HANNA M. MITIAS, M.D.

                /s/ *Sidney E. Lampton*
H. Rusty Comley (MS Bar # 102307)
J. Scott Gilbert (MS Bar # 102123)
Sidney E. Lampton (MS Bar #105957)
WATKINS & EAGER PLLC
400 East Capitol Street (39201)
Post Office Box 650
Jackson, Mississippi 39205-0650
Telephone: (601) 965-1900
Facsimile: (601) 965-1901
rcomley@watkinseager.com
sgilbert@watkinseager.com
slampton@watkinseager.com

*Attorneys for Defendants*