IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ex rel. KEVIN GRAY, ) <br>  ) <br> Plaintiff-Relator, ) <br>  ) <br> v. ) <br>  ) <br> MITIAS ORTHOPAEDICS, PLLC; CHAMPION ) <br> ORTHOPAEDICS DESOTO, P.L.L.C. d/b/a ) <br> CHAMPION ORTHOPAEDICS & SPORTS ) <br> MEDICINE; and HANNA M. MITIAS, M.D., ) <br>  ) <br> Defendants. ) | Civil Action No: <br> 3:15-cv-127-MPM-JMV |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SETTLEMENT ENFORCEMENT

This is not a motion to enforce, it is a motion to avoid signing the standard False Claims Act settlement agreement contemplated by the United States that contains the specific terms of this case announced at the settlement conference. The Court should deny the motion to enforce settlement or enforce the proper prosed Settlement Agreement signed by the United States. If the Court determines that there was no meeting of the minds, it should set aside the settlement altogether.

1. *The United States presented a signed Settlement Agreement to the Defendants reflecting its understanding of the settlement containing all material terms.*

The Court can view for itself the United States' proposed version of December 5th compared to Defendants' latest proposed version of November 29th. (See Exhibit A & Exhibit B). A quick comparison shows the absurdity and disingenuousness of Defendants' framing of the issues and prayer for relief. The United States' proposed agreement is derived from the

Government's standard format for settlement agreements in False Claims Act matters. False Claims Act settlements with the Government routinely include the language to which Defendants now objects, including reciting the covered conduct, releases for the parties, and consent to public disclosure of the settlement and others.[1]

Dr. Mitias and his counsel have signed Settlement Agreements with the exact same standard language that is used in every HHS False Claims Act settlement nationwide.  (See Settlement Agreement *United States ex rel. Scallorn v. Ageless Men's Health, LLC*  - Exhibit "C"; *United States v. Hammitt et al.* – Exhibit "D"; *In the matter of Starkville Clinic for Women* – Exhibit "E".)  Just now, they seek to have the Court order a generic settlement agreement that has never even been proposed by the defense in the last two months and doesn't reflect the language anticipated by the United States.

This is not a matter of the USA's Settlement Agreement not reflecting all material terms – because it does; it is a matter of the Settlement Agreement not being styled the way Defendants prefer for its planned contract action against Mitias' former business partners or other reasons.  A written agreement containing the names of those third parties would violate the Privacy Act, however, and so would be wholly improper.  As shown below, the USA's Settlement Agreement incorporates this "term" without violating the law.  Defendants also seek relief in this motion that would avoid the standard language that Dr. Mitias and his counsel have previously signed without question in an exact same viscosupplementation case and which is material to the United

---

[1] *See* https://www.justice.gov/opa/pr/justice-department-s-false-claims-act-settlements-and-judgments-exceed-56-billion-fiscal-year (linking to dozens of 2021 FCA settlements).

States' understanding of this agreement and *all* agreements as shown below. (See Exhibit F – email chain 12/5/22). The instant motion ignores their own proposal as of November 29th.

    a.    <u>Defendants always understood the Settlement Agreement is not limited solely to the specific terms announced in Court</u>.

If the Defendants were genuine about the announcement on the record being the final and only recitation of the settlement, it would not have entertained and engaged in countless debate over the version of the standard FCA release. Counsel exchanged many emails and several lengthy phone calls to get to this apparent stalemate. A sample of the correspondence shows Mitias' attorney, Rusty Comley, asking if the undersigned is "working on a draft written settlement agreement?" exchanging proposals and revisions and further asking "I assume we are still waiting on HHS?" (Exhibit G – email chain 10/17/22 – 10/27/22.) The plain language of these phrases and the entire email chain (with version after version) shows that Defendants and their counsel absolutely knew that settlement agreement contains more than just the specific announced terms.[2] If not, defense counsel would have drafted, sent, and insisted upon its "four-page" prosed settlement agreement back in early October.

The United States is not a private party - it has many agencies and responsibilities each with its own standard settlement agreements with additional language necessary so that United States is not bound in ways previously not considered or agreed to. This always involves agency counsel review in every case. The Defendants are aware of the process, openly acknowledged the process, and understood just like the United States that the agreement is not comprised solely of

---

[2] The plaintiff was tasked with preparing the Settlement Agreement – to incorporate the standard terms that are of vital interest to the plaintiff in other actions. The plaintiff, United States, did the same process in the other cited FCA settlements after the specific terms were agreed to. In almost every other civil matter the defendant prepares the release for this same reason - to ensure uniformity of releases because such is material to the party – not to alter the specific terms.

the terms stated on the record. The delay and apparent stalemate is a result of Defendants' insistence on editing of the standard language that is material to the United States' resolution of this matter.[3]

Needless to say, the United States always understood the Settlement Agreement to incorporate its standard terms. The party seeking to enforce the agreement and claiming the benefit has the burden of proving by a preponderance of the evidence that there was a meeting of the minds. *Warwick v. Matheney*, 603 So. 2d 369, 336 (Miss. 1992). Clearly, the United States through counsel denies there was a meeting of the minds if such is restricted, for the first time in the instant motion, to the terms announced on the record. Also, Defendants' own actions prove they have failed to meet this burden.

2. *The United States cannot be ordered to violate the Privacy Act.*

The executed Settlement Agreement cannot contain the names of non-parties without their consent. This has been a central sticking point during the nearly two-month discussion of the draft agreement. The settlement agreement is intended to memorialize the terms of the deal, not to be crafted to use as a sword in unrelated litigation.

Regardless, the United States' proposal protects the Defendants in all material respects. It states: "**This Settlement Agreement incorporates the settlement announced on the record on October 11, 2022, at the United States District Courthouse in Greenville, Mississippi.**" (See Exhibit A - ¶ I.) The defense's representation to the Court and argument on this matter is unfounded and completely misleading. The United States is simply trying to generate the

---

[3] See Ex. F. The only remaining difference in Ex. A & Ex. B is Defendants' proposed ¶ H: "Defendants deny the United States' contentions and instead contend that all beneficiaries received high-quality compounded viscosupplementation medications that were equal to or better than any name brand viscosupplementation agents..." This term has nothing to do with the settlement.

appropriately-styled document that it is required to maintain as an official government record. It should be noted that the Mitias Defendants have not even offered to indemnify the United States, its counsel or other signatories for causes of action arising from such a violation of law. The Defendants are only concerned with its planned civil action against the third parties rather than respecting the rights and obligations of the parties to this civil action.

> 3. The Agreement contains the standard terms of False Claims Act settlements in matters involving the Department of Health and Human Services that are material to the United States.

Defendants take time to complain about the standard terms in various ways but do not explain how those terms are not material to the United States. Instead, Defendants present a fiction to the Court that only the specific terms on the record are material.

The United States' contentions as to covered conduct are contained in *every* agreement as part of explaining the "Covered Conduct." (See ¶¶ C & D in *Ageless Men's Health* (Mitias); See ¶¶ C & D in *Hammitt;* See ¶¶ B & D in *Starkville Clinic for Women*). The defense sought, in its version, to insert its own version of contentions and denials that are not contained in any standard release and are not relevant to this case and certainly are not a part of defining the Covered Conduct. The United States does not and has not agreed to such and doing so amounts to alteration of the standard terms that the United States requires and simply has no place in any agreement.

It is worth noting to the Court that the Defendants balked at various standard language provisions for weeks before relenting in its latest draft (See Exhibit "B"). Considerable time was devoted to Defendants objection to "All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public" in an apparent effort to stymie any administrative public disclosure by HHS-OIG of the agreement.

5

There are a few clear examples of why this term is material and included in every agreement. By seeking to enter its newly proposed Settlement Agreement (Dkt. 315-2), the Defendants will argue (and its counsel, Rusty Comley, has argued to the undersigned) that HHS cannot take administrative action such as posting information on the appropriate governmental websites because Defendants did not consent to public disclosure. Consent to public disclosure of Government settlements is a standard and material term of FCA settlements partly to prevent such a ploy – which is also an end-run around the administrative remedy reservation.

Also, the Parties agree this is not a confidential settlement, and so this provision does not confer any new or additional rights upon the Parties. However, statutes such as the Freedom of Information Act, 5 U.S.C. 552, require disclosure of certain Government documents. This standard provision is a safeguard that simply memorializes the settling defendants' understanding and avoids the possibility of a subsequent disagreement as to whether this information may be disclosed were it to be requested by the public and protects the United States.

Other examples include the fact that Defendants wanted the release of individuals (such as Dlabach et al.) that were not parties to action and paid no consideration in the settlement. Such language is not acceptable and not included in any standard draft including those signed by Mitias and his attorneys. Next, the defense wanted to remove the standard language in the USA's proposed Settlement Agreement (See Exhibit A at ¶ 10) that protects the United States and its employees from the threat of litigation from a vexatious defendant.

Despite these examples, and others, ultimately all of terms were accepted by the Defendants but for those already addressed. (See Exhibit A, Exhibit B, Exhibit F) This is

further proof of the material nature of the standard terms to the United States in healthcare FCA cases, and proof that the Defendants know those are material terms.

   4.  *Defendants' prayer for relief conflicts with the specific terms of the settlement and cannot be granted.*

Defendants ask for two forms of relief: a transcript of the specific terms announced at the settlement conference, or an Order compelling the signing of its newly proposed settlement agreement. Ironically, both would directly contradict the terms of the settlement. First, the terms require a signed agreement. It is unfathomable that the United States' written agreement was restricted to the two hand-written pages read aloud by the Court. (See Dkt. 312 audio) The United States, at all times, expected the written agreement to reflect the standard terms that Dr. Mitias and his counsel have signed before and have since been adopted by the Defendants in its own proposal.

Second, the newly proposed settlement agreement does not even track the announcement on the record. It is edited to the defense's liking and contains additional paragraphs not included at the settlement conference. This is antithetical to their entire motion. Defendants wish to have it both ways – argue to the Court the specific terms are the *only* terms while receiving the benefit of its own terms. Rather than seek a mediation of this matter from the Court, the Defendants' seek to have its own new version thrust upon the parties by Court order. This is why incorporating the settlement announced on the record, agreed to by all parties in attendance—as the United States' draft does—avoids any such dispute.

Prayer for Relief

For these reasons, the motion should be denied. If any action to enforce were taken by the Court, the USA's settlement agreement should be the one enforced. It is wholly proper and complete.

7

Alternative Prayer for Relief

The Defendants, by and through their pleading, have created an odd situation that forces this Court to consider setting aside the settlement in its entirety. The United States never considered the announcement on the record to replace and exclude the standard terms (that also incorporates the specific terms). The Court clearly stated that this was not the formal agreement and the settlement requires a formal signed agreement for its terms to take effect. The handwritten terms read by the Court is no different in substance than any mediation where a handwritten terms sheet is prepared and not read and formal draft is prepared later. The undersigned has never seen a case where the formal document does not contain the standard terms that are material to the parties along with each case's specific terms. The United States has provided examples of the exact same process involving Dr. Mitias and his counsel. The United States has thousands of cases pending and has a vested interest in the uniformity of the terms on behalf of its agency clients.

If the Defendants continue to maintain that *only* the terms on the record are material (and clearly the United States maintains that is not the case), the parties do not have a mutual agreement and sadly, the settlement must be set aside.

This the 12th day of December 2022.

                                                UNITED STATES OF AMERICA

                                                CLAY JOYNER
                                                United States Attorney

By:    /s/ J. Harland Webster
          J. Harland Webster - MS BAR #102458
          J. Luke Benedict – MS BAR #102992
          Assistant United States Attorneys
          Northern District of Mississippi
          Ethridge Professional Building

        900 Jefferson Avenue
        Oxford, MS 38655-3608
        Telephone: (662) 234-3351
        E-Mail: joseph.webster@usdoj.gov
        E-Mail: luke.benedict@usdoj.gov

Counsel for Relator, Kevin Gray:
Julie K. Bracker
Georgia Bar No. 073803
(pro hac vice)
Jason Marcus
Georgia Bar No. 949698
(pro hac vice)
BRACKER & MARCUS LLC
3355 Lenox Road, Suite 660
Atlanta, GA 30326
Tel. (770) 988-5035
Fax (678) 648-5544
Julie@FCAcounsel.com
Jason@FCAcounsel.com

J. Brad Pigott
Pigott & Johnson
775 North Congress Street
Jackson, MS 39202
Tel. (601) 354-2121
Fax (601) 354-7854
bpigott@pjlawyers.com

CERTIFICATE OF SERVICE

    I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record on this the 12th day of December 2022:

        /s/ J. Harland Webster
        J. HARLAND WEBSTER